UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| D.B., a minor, by DANIEL J. BRIGHTER and MARLIN BRIGHTER, parents and natural guardians, | CIVIL ACTION NO. 3:23-cv-01440 |
| Plaintiff, | (SAPORITO, J.) |
| v. | |
| JOHN A. GROSSI, JR., et al., | |
| Defendants. | |

## MEMORANDUM

This is a premises liability action. The plaintiff, D.B., a minor child, was injured when he fell while attempting to cross from the end of a lakeside dock to the shoreline. D.B.'s family had rented a vacation home with frontage on Lake Wallenpaupack. Along that frontage, the homeowner maintained a floating dock on the surface of the lake, which connected to the shoreline by a walkway or ramp. On the date of D.B's injury, however, the end of the dock's walkway or ramp was separated from the shoreline.[1] Seeking to avoid the water and the danger of walking

---

[1] It is unclear from the record whether the floating dock had become unmoored or had shifted (the plaintiff alludes to a storm that had passed

*(continued on next page)*

on wet, slippery rocks while returning to shore, D.B. jumped over this gap, from the end of the dock onto the shoreline, where he fell and fractured his leg.

This matter comes before the court on a motion for summary judgment by one of the defendants, BIF III Holtwood, LLC ("Holtwood"). Doc. 27. The motion is fully briefed and ripe for decision. Doc. 29; Doc. 36; see also Doc. 27-2; Doc. 35.

The facts material to this motion are undisputed.[2]

Holtwood owns and operates Lake Wallenpaupack for the generation of hydroelectric power, under a license issued by the Federal Energy Regulatory Commission. Under the terms of that license, Holtwood holds the lake open to public recreational use, free of charge.

---

through the area a few days earlier, implying that the dangerous condition of a gap between the dock's ramp and the shoreline may have resulted from the storm), or whether it was routinely maintained in this dangerous condition (the homeowner's deposition testimony suggested that the gap was often present, subject to fluctuating water levels of the lake, and photo exhibits in the record depict a gap of different widths at different times).

[2] Although the non-moving plaintiff has quibbled with a certain paragraphs of the moving defendant's statement of material facts, the particular facts or language disputed are not material to our decision. In any event, "[t]he applicability of immunity [under the RULWA] is a question of law, not fact." Ruspi v. Glatz, 69 A.3d 680, 689 (Pa. Super. Ct. 2013).

Holtwood owns the entire lake, plus a 52-mile long, narrow strip of undeveloped shoreline surrounding the lake.[3]

The owners of the vacation home where D.B. was staying had obtained a shoreline use permit from Holtwood to place a floating dock on the lake, in front of their property. Among other specifications required by the permit, the dock was required to be securely anchored and connected to the shoreline by a walkway or ramp, and the permittee was required to maintain the dock generally, and to adjust it in response to fluctuating water levels.

Holtwood contends that it is entitled to judgment as a matter of law under Pennsylvania's Recreational Use of Land and Water Act ("RULWA"), 68 P.S. § 477-1 *et seq.* "RULWA was enacted to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Stanton v. Lackawanna Energy, Ltd.*, 886 A.2d 667, 675 (Pa. 2005). "RULWA provides landowners with immunity from ordinary negligence liability in instances where the land or water area is provided to the public for recreational purposes free of charge."

---

[3] The width of the strip varies between 5 and 500 feet.

*Ruspi v. Glatz*, 69 A.3d 680, 687 (Pa. Super. Ct. 2013) (citing *Stanton*, 886 A.2d at 675).

Under RULWA, "an owner of land owes no duty of care to keep the premises safe for entry or use by recreational users, or to give any warning of a dangerous condition, use, structure, or activity on such premises to recreational users." 68 P.S. § 477-3. The term "land," as used in RULWA, is defined as "land, roads, water, watercourses, private ways and buildings, amenities, structures, boating access and launch ramps, bridges, fishing piers, boat docks, ramps, paths, paved or unpaved trails, hunting blinds and machinery or equipment when attached to the realty." 68 P.S. § 477-2(1). Lake Wallenpaupack itself—including both the body of water and the narrow, undeveloped strip of land surrounding the lake and owned by Holtwood—is "exactly the type of area that the [RULWA] is intended to cover." *See Stone v. York Haven Power Co.*, 749 A.2d 452, 457 (Pa. 2000) (considering a similar lake created by the damming of a waterway to generate hydroelectric power and used by the public for recreational purposes free of charge); *see also Ruspi*, 69 A.3d at 687 (quoting *Stone*, 749 A.2d at 457, in the context of Lake Wallenpaupack).

The plaintiff argues that Lake Wallenpaupack does not constitute

protected "land" under RULWA because the area *surrounding* the lake is "highly developed land"—privately owned and improved residential and commercial lots—and not actually available to the public for recreational use. Only a "really small" percentage of the shoreline has been made available to the public as recreation areas, campgrounds, or hiking trails. But the fact that "the areas surrounding Lake Wallenpaupack are highly developed" is immaterial to the issue of Holtwood's immunity under RULWA, as the court's proper focus is on the "specific land where the injury occurred, rather than on the property as a whole." *Ruspi*, 69 A.3d at 688 (citing *Murtha v. Joyce*, 875 A.2d 1154, 1158 (Pa. Super. Ct. 2005)). Although adjacent to numerous private parcels, the lake itself (and the immediately adjacent shoreline) are open to public recreational use, free of charge. Moreover, D.B. did not fall and injure himself on the privately owned land fronting the lake; he injured himself traversing from a permitted floating dock situated on the water itself to the immediately adjacent, undeveloped strip of shoreline owned by Holtwood and held open for public recreational use, free of charge.

    The plaintiff argues that the floating dock itself is not subject to immunity under RULWA because it constitutes an improvement to land,

rather than undeveloped or "raw" land. But the floating dock at issue falls squarely within the statutory definition of "land" protected by RULWA. *See* 68 P.S. § 477-2(1) (defining "land" to include "amenities, structures, . . . boat docks, ramps, . . . or equipment when attached to the realty"). Moreover, courts have recognized that "RULWA's inclusion of structures 'attached to the realty' means that 'ancillary structures' to otherwise covered land receive protection as well." *DeMolick v. United States*, No. 22-1973, 2023 WL 3562979, at *3 (3d Cir. May 19, 2023). An "ancillary structure" is one that facilitates recreational use of the covered land to which it is attached and offers no independent recreational use. *See id.*; *see also, e.g., id.* (parking lot and paved walkway permitting access to toilet facilities at a national park); *Kelley v. United States*, No. 11-5537, 2012 WL 1392520, at *4–5 (E.D. Pa. Apr. 20, 2012) (vinyl deck surface or walkway at a park); *Bashioum v. Cnty. of Westmoreland*, 747 A.2d 441, 445 (Pa. Commw. Ct. 2000) (shelters, toilet facilities, and fireplaces within parks); *Brezinski v. Cnty. of Allegheny*, 694 A.2d 388, 390 (Pa. Commw. Ct. 1997) (picnic shelter at park). We have no difficulty concluding that, as a matter of law, the floating dock at issue constitutes such an "ancillary structure," facilitating recreational use of Lake

Wallenpaupack and offering no independent recreational use.

Finally, the plaintiff argues that, even if RULWA immunity applies to the location of D.B.'s injury, Holtwood's conduct was willful or malicious, and thus exempt from immunity under RULWA. The statute provides that, even if particular land is ordinarily covered by RULWA, the landowner nonetheless may be held liable for "wil[l]ful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." 68 P.S. § 477-6(1). "Willfulness for RULWA purposes requires that: (1) the landowner had actual knowledge of a dangerous condition, and (2) the danger was not obvious to the visitors on the land." *DeMolick v. United States*, 593 F. Supp. 3d 165, 171 (M.D. Pa. 2022), *aff'd*, No. 22-1973, 2023 WL 3562979 (3d Cir. May 19, 2023); *see also DeMolick*, 2023 WL 3562979, at *4 ("Willfulness under Pennsylvania law means '(1) actual knowledge of a danger (2) that is not obvious to those entering the premises.'"); *Ruspi*, 69 A.3d at 690 ("[W]illfulness under § 477-6 contains two elements: (1) actual knowledge of a danger (2) that is not obvious to those entering the premises."). "A dangerous condition is 'obvious' when 'both the condition and the risk' would be recognized by a reasonable person in the position of the plaintiff using 'normal perception,

- 7 -

intelligence, and judgment.'" *DeMolick*, 593 F. Supp. 3d at 171 (quoting *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)); *see also DeMolick*, 2023 WL 3562979, at *4 (quoting *Carrender*, 469 A.2d at 123–24).

But the plaintiff has failed to adduce any evidence whatsoever that Holtwood had *actual knowledge* of the dangerous condition that caused D.B.'s injury.

> Legal dictionaries give "actual knowledge" the same meaning: "real knowledge as distinguished from presumed knowledge or knowledge imputed to one." The qualifier "actual" creates that distinction. In everyday speech, "actual knowledge" might seem redundant; one who claims "knowledge" of a topic likely means to suggest that he actually knows a thing or two about it. But the law will sometimes impute knowledge—often called "constructive" knowledge—to a person who fails to learn something that a reasonably diligent person would have learned. . . . The addition of "actual" . . .signals that the [person's] knowledge must be more than "potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal."

*Intel Corp. Inv. Policy Comm. v. Sulyma*, 589 U.S. 178, 184–85 (2020) (citations and brackets omitted). Here, the plaintiff points to a Holtwood corporate representative's deposition testimony indicating that Holtwood was aware of heavy rainfall a few days prior to D.B.'s injury, and that it was aware that heavy rainfall created a risk of floating docks becoming

unmoored and floating freely around on the lake.[4] But knowledge of a risk that heavy rainfall might possibly detach some number of floating docks from their moorings along the 52-mile shoreline of Lake Wallenpaupack does not constitute *actual knowledge* of the particular dangerous condition at issue in this case—a gap between the dock and shoreline at the particular spot where D.B. was injured.[5] Indeed, under these circumstances, it does not appear to constitute even constructive knowledge.

Accordingly, the defendant's motion for summary judgment (Doc. 27) will be granted.

An appropriate order follows.

Dated: September 30, 2025          *s/Joseph F. Saporito, Jr.*
                                   JOSEPH F. SAPORITO, JR.
                                   United States District Judge

---

[4] The deponent also testified that, shortly before that storm, Holtwood sent an email to all landowners with property fronting the lake to remind them to ensure their docks were secured tightly and properly labeled with their permit numbers.

[5] As we have noted, it is not at all clear that the heavy rainfall that preceded D.B.'s injury by a few days had anything to do with the dangerous condition of the dock where he was injured; it may have been a persistent condition well before that storm. *See supra* note 1.